NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210717-U

NO. 4-21-0717

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 13, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| REGINALD SCOTT, | ) | No. 15CF179 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| | ) | Judge Presiding. |

_____

JUSTICE BRIDGES delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:    Having found no issues of potential merit to support an appeal, we grant the
Office of the State Appellate Defender's motion to withdraw as counsel on appeal
and affirm the denial of defendant's motion to withdraw his guilty plea.

¶ 2     Defendant, Reginald Scott, appeals the denial of his motion to withdraw his guilty

plea. The trial court appointed the Office of the State Appellate Defender (OSAD), who now

moves to withdraw, claiming that this appeal presents no issue of arguable merit. We grant

counsel's motion and affirm the denial of the motion to withdraw defendant's guilty plea.

¶ 3                              I. BACKGROUND

¶ 4     We previously summarized the facts of this case in defendant's prior appeals (see

*People v. Scott*, 2020 IL App (4th) 190259-U; *People v. Scott*, 2019 IL App (4th) 180244-U; and

*People v. Scott*, 2017 IL App (4th) 150761), and we again restate the relevant facts here.

¶ 5	In February 2015, defendant was charged with three counts of first-degree murder (720 ILCS 5/9-1(a)(1), (a)(2), (a)(3) (West 2014)) in connection with the death of Vicente Mundo. In May 2015, pursuant to a plea agreement, defendant pleaded guilty to count II (*id.* § 9-1(a)(2)), the State dismissed counts I and III, and the State capped its sentencing recommendations at 60 years' imprisonment.

¶ 6	The trial court admonished defendant, first asking if defendant understood "what they are saying" in the charge. Defendant responded, "Yes." The court stated the offense called for "a mandatory minimum sentence of 45 years," with a maximum sentence of natural life. Defendant stated he understood the possible penalty. The court reviewed with defendant the rights he was giving up by pleading guilty, including asking defendant, "So you understand that when you plead guilty that means we are not going to have a trial?" and defendant responded, "Yes." The court confirmed no promises were made to defendant beyond the terms of his agreement and he was voluntarily pleading guilty.

¶ 7	The State presented a factual basis for the plea. On January 25, 2015, Daniel Gonzalez arranged a meeting with Vicente Mundo to purchase cannabis. Mundo's sister reported him missing two days later. Mundo's body was found in Tolono, Illinois, and the cause of death was a single gunshot wound to the back of his head. Investigators located Gonzalez's vehicle. The passenger-side window was damaged, consistent with a gunshot, and the vehicle had new seat covers. A forensic examination of Gonzalez's vehicle revealed defendant's fingerprints on the outside trunk lid, a fired 9-millimeter cartridge casing, blood in the front seats and in the trunk, and the front license plate from Mundo's car.

¶ 8	Investigators interviewed defendant. Defendant admitted he and Gonzalez bought cannabis from Mundo on January 25. When confronted with the evidence, defendant initially

reported Gonzalez shot Mundo, and he helped Gonzalez dispose of Mundo's body. Defendant admitted driving Mundo's vehicle and planning to sell it with Gonzalez. Defendant further admitted he and Gonzalez plotted to rob Mundo in the apartment. The plan was to make it look like defendant was robbing both Gonzalez and Mundo. When Mundo changed the meeting place to the parking garage, defendant and Gonzalez changed the plan. Defendant was in the trunk of Gonzalez's vehicle, but he became stuck between the trunk and the back of the car. Mundo saw defendant and tried to exit the car, but Gonzalez locked the door. Defendant admitted firing the gun that killed Mundo. He pawned the gun at Pawn King. Investigators located the gun at Pawn King.

¶ 9        The trial court accepted defendant's guilty plea for first degree murder.

¶ 10       In July 2015, the trial court held defendant's sentencing hearing. Defendant's mother testified in mitigation that defendant suffered a head injury as a child. After the injury, defendant had problems with short-term memory and impulsive behavior.

¶ 11       The trial court sentenced defendant to 55 years in prison. The court admonished defendant on his rights to appeal, informing defendant that "[p]rior to taking an appeal, you must file in this court, within thirty days a written motion asking to have the judgment vacated and for leave to withdraw your guilty plea. In that motion, you must specify your reasons for that request."

¶ 12                          A. Motion to Withdraw Guilty Plea

¶ 13       On July 24, 2015, defendant filed a timely motion to withdraw his guilty plea. In his motion, defendant asserted he (1) did not understand he could not appeal his sentence by entering this type of plea agreement, (2) did not fire the gun that killed Mundo, and (3) wished to

proceed to trial. Defense counsel filed a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. Dec. 11, 2014).

¶ 14   At a hearing on the motion, defendant testified he sustained a head injury when he was approximately 11 or 12 years old. The injury affected his memory and comprehension, and defendant stated, "If I don't write it down then, or someone doesn't remind me later or repeatedly, usually I don't remember it."

¶ 15   The trial court denied defendant's motion. The court reasoned the alleged head injury did not appear to deter defendant from completing high school, playing soccer at a collegiate level, and enrolling in college courses. As to defendant's claim he was unaware he could not appeal his sentence by entering into the plea agreement, the court concluded defendant was properly admonished when he pleaded guilty, and he understood the agreement.

¶ 16   Defendant appealed. On appeal, this court remanded, finding defense counsel did not strictly comply with Rule 604(d) because his certificate did not state counsel reviewed the report of proceedings from defendant's sentencing hearing. See *Scott*, 2017 IL App (4th) 150761, ¶ 19.

¶ 17                    B. Amended Motion to Withdraw Guilty Plea

¶ 18   On remand, defendant filed an amended motion to withdraw his guilty plea. The motion alleged the same three grounds for withdrawal as the initial motion and one new allegation: "That on or about August 2017, Defendant ran into co-defendant, Daniel Gonzalez, while at Menard Correctional Facility, and co-defendant stated he would be willing to submit an affidavit stating that he (co-defendant) was the one who fired the gun that killed Vicente Mundo." No supporting affidavit was attached to the motion. Counsel filed a certificate pursuant to Rule 604(d).

¶ 19        After a hearing, the trial court denied defendant's amended motion to withdraw

his guilty plea. Defendant appealed, and this court again vacated the denial and remanded for

further proceedings. This court concluded counsel failed to comply with Rule 604(d) in that

counsel did not submit an affidavit in support of the new allegation related to Gonzalez. *Scott*,

2019 IL App (4th) 180244-U, ¶ 17.

¶ 20                        C. New Motion to Withdraw Guilty Plea

¶ 21        On remand, defendant was represented by new postplea counsel. New counsel

filed a new motion to withdraw defendant's guilty plea. Defendant asserted the same basis for his

motion as was set forth in the amended motion to withdraw his guilty plea. Counsel attached his

own "affidavit" to the motion. The document was not notarized. In the document, counsel

explained he spoke with Gonzalez, who informed counsel he would not talk to defendant's

counsel about anything related to the case until defendant's counsel spoke with Gonzalez's

attorney, Howard Weisman, a Chicago-based attorney. Counsel attempted twice to speak with

Weisman, leaving voicemail messages, but Weisman did not return his calls.

¶ 22        At the hearing on the motion, the court stated it remembered the evidence and

arguments from the prior hearings, found defendant's counsel had "met a stone wall" trying to

interview Gonzalez, and denied defendant's motion to withdraw his guilty plea.

¶ 23        On appeal, this court "reluctantly" remanded for a third time. See *Scott*, 2020 IL

App (4th) 190259-U, ¶ 33. The State conceded counsel's "affidavit" was not a true affidavit,

neither sworn nor notarized, and therefore failed to strictly comply with Rule 604(d). *Id.* ¶ 24.

This court instructed the trial court to assign a new judge to the case, due to comments by the

trial court on second remand, which demonstrated the court held some "misconceptions" as to

this court's previous orders, which "may have handicapped the court's ability to ensure compliance with Rule 604(d)." *Id.* ¶ 35.

¶ 24                                    D. Present Motion to Withdraw Guilty Plea

¶ 25          On October 15, 2021, counsel filed a new motion to withdraw defendant's guilty plea and vacate the judgment. In his motion, defendant alleged (1) he did not understand the nature of the charges against him, (2) he did not actually fire the gun and kill Mundo, (3) "[t]hat on or about August 2017, Defendant ran into *** Gonzalez, while at Menard Correctional Facility, and [Gonzalez] stated that he would be willing to submit an affidavit stating that he [(Gonzalez)] was the one who fired the gun that killed Vicente Mundo," and (4) defendant wished to proceed to trial.

¶ 26          Defendant attached to his petition his own affidavit, explaining he did not understand the charges due to the head injury in his youth, and prior to pleading guilty, defendant informed his counsel he did not understand the charges against him. Defendant also asserted he did not fire the gun that killed Mundo and Gonzalez told defendant he would sign an affidavit asserting the same. Also attached to the petition was an affidavit from defense counsel, in which counsel explained he sent a letter to Gonzalez and then contacted Gonzalez by phone. Gonzalez stated he would not speak with counsel until counsel had spoken with Gonzalez's attorney, Weisman. Counsel spoke with Weisman, who indicated he would reach out to Gonzalez and his family. A month later, counsel contacted Weisman, who indicated he had been unsuccessful in contacting Gonzalez but would reach out again. Another month had passed, and counsel received no further contact from Weisman.

¶ 27          Counsel filed a certificate pursuant to Rule 604(d), which affirmed:

"1. I have consulted with Defendant in person, by mail, by phone, or by electronic means to ascertain the Defendant's contentions of error in the entry of the plea of guilty and in the sentence;

2. I have examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and

3. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

¶ 28 In December 2021, the trial court held a hearing on defendant's motion. Defendant testified that when he entered his guilty plea, he thought he could withdraw his guilty plea and proceed to trial. Defendant described the head injury he sustained at around 11 or 12 years of age. As a result of the injury, defendant had short-term memory problems, he would have trouble remembering anything he did not write down or have repeated to him, and he had difficulty completing "complex scenario[s]." In college, defendant had to try "a little bit harder" to be an average student. At the time of his plea, defendant informed his counsel he did not understand the charges and the implications of pleading guilty.

¶ 29 Defendant also testified he was in the recreational yard at Menard Correctional Center with Gonzalez. Gonzalez told defendant he would sign an affidavit stating Gonzalez was the shooter and defendant was not involved in the murder of Mundo. Defendant believed Gonzalez was transferred and never finalized the affidavit. Defendant confirmed he wished to proceed to trial.

¶ 30 On cross-examination, defendant agreed, during his statement in allocution at sentencing, he stated, "I do apologize to the family for my acts and what happened to Mundo."

However, defendant continued to deny he was the one that shot Mundo. He also agreed he did not speak up when the State stated defendant shot Mundo when reciting the facts for the plea.

¶ 31    The trial court reviewed defendant's claims in turn. The court found no basis to conclude that the injury "in any way" affected defendant's ability to understand his plea. At the sentencing hearing, the court's questions were "not so complex" that defendant's prior concussion would prevent him from understanding his plea. Further, defendant was asked "point blank" if he understood that by pleading guilty, he would not have a trial. Defendant responded, "Yes." The court "believe[d] [defendant] absolutely, consistent with what is on the transcript from May 12th, 2015, knew the charges against him."

¶ 32    As to defendant's claim he did not fire the gun, the trial court did "not believe that allegation remotely." The court stressed the evidence, in this case, was consistent with defendant being the one that fired the gun. Defendant was acting as the robber in his and Gonzalez's plot, defendant owned the gun, and defendant sold the gun to the pawn shop after the murder.

¶ 33    On defendant's related claim of Gonzalez's affidavit, the trial court noted the situation undermined defendant's argument he could not understand complex situations. The court found defendant minimized what he was saying during his testimony, spoke in a halting manner, and had to be reminded to answer at least once. The court "simply [did] not believe the testimony of [defendant] about this allegation that Mr. Gonzalez after the fact would submit an affidavit in support of him."

¶ 34    Finally, the trial court believed defendant was truthful in that defendant wished to proceed to trial. However, the court explained wishing to proceed to trial is not a valid basis to withdraw a guilty plea. The trial court denied defendant's motion to withdraw his guilty plea.

¶ 35          The trial court appointed OSAD to represent defendant on appeal. In March 2022,

OSAD filed a motion for leave to withdraw as counsel on appeal pursuant to *Anders v.*

*California*, 386 U.S. 738 (1967), contending the appeal is without merit. This court granted

defendant leave to file a response to OSAD's motion on or before May 4, 2022. Defendant has

not done so.

¶ 36                                    II. ANALYSIS

¶ 37          Pursuant to *Anders* , 386 U.S. at 738  and *People v. Jones*, 38 Ill. 2d 384 (1967),

OSAD moves to withdraw as counsel. In her motion, appellate counsel states that she read the

record and found no issue of arguable merit. Specifically, she contends no meritorious argument

can be made to establish that the trial court erred in denying defendant's motion to withdraw the

guilty plea on six potential issues: (1) Whether the court complied with Illinois Supreme Court

Rule 402 (eff. July 1, 2012); (2) whether the court complied with Illinois Supreme Court Rule

605(c) (eff. Oct. 1, 2001); (3) whether counsel complied with Illinois Supreme Court Rule

604(d) (eff. July 1, 2017); (4) whether the trial court erred in denying defendant's motion to

withdraw his guilty plea; (5) whether defendant could challenge his sentence as excessive

without withdrawing his guilty plea; and (6) whether defendant received ineffective assistance of

postplea counsel. We agree with appellate counsel that none of these potential issues has merit.

¶ 38                              A. Rule 402 Requirements

¶ 39          Before accepting a defendant's negotiated guilty plea, the trial court must

substantially comply with Rule 402. Before accepting the plea, the court must give the defendant

certain specified admonishments regarding the nature of the charge that he faces, the possible

sentences therefore, his right to plead guilty or not guilty, and the consequences of a guilty plea.

See Ill. S. Ct. R. 402(a) (eff. July 1, 2012). The court is further required to ask the defendant to

confirm the terms of his plea agreement after the terms are stated in open court and determine the plea is voluntary and not a result of force, threats, or promises beyond those of the plea agreement. Ill. S. Ct. R. 402(b) (eff. July 1, 2012). Finally, the court must determine if there is a factual basis for the plea. Ill. S. Ct. R. 402(c) (eff. July 1, 2012).

¶ 40        At defendant's plea hearing, the trial court discussed with defendant the charge and possible sentence, defendant's rights, the terms of the plea agreement, and if the plea was voluntary and not the result of force, threat, or other promises. Defendant responded in the affirmative that he understood all the admonishments and his plea was voluntary. The State presented a factual basis for the plea. As the trial court fully complied with Rule 402, we agree with appellate counsel any suggestion to the contrary would have no merit.

¶ 41        Additionally, defendant did not raise a claim pursuant to Rule 402 in his motion to withdraw his guilty plea. Therefore, regardless of the merit of such a claim, any claim of error in Rule 402 admonishments would be deemed waived on appeal. See Ill. S. Ct. R. 605(c) (eff. Oct. 1, 2001) ("[I]n any appeal taken from the judgment on the plea of guilty any issue or claim of error not raised in the motion to vacate the judgment and to withdraw the plea of guilty shall be deemed waived.").

¶ 42                    B. Rule 605(c) Admonishments

¶ 43        Rule 605 requires, at the time of defendant's sentencing, the trial court must admonish defendant as to his right to appeal. See Ill. S. Ct. R. 605 (eff. Oct 1, 2001). Rule 605(c) lists the specific admonishments to be given to defendants who plead guilty pursuant to a negotiated plea agreement: (1) that defendant has a right to appeal; (2) that prior to taking an appeal, the defendant must file a written motion to have the judgment vacated and for leave to withdraw his guilty plea within 30 days of the imposition of sentence; (3) that if the motion is

allowed, the judgment and sentence will be vacated and the matter set for trial; (4) that the State may request any charges dismissed pursuant to the plea agreement be reinstated and set for trial; (5) that if the defendant is indigent, transcript copies will be provided and counsel appointed; and (6) on appeal, any claim not raised in the motion to withdraw guilty plea shall be deemed waived. Ill. S. Ct. R. 605(c) (eff. Oct. 1, 2001). We review compliance with Rule 605(c) *de novo*. *People v. Dominguez*, 2012 IL 111336, ¶ 13.

¶ 44 In this case, the trial court fully admonished defendant of his appeal rights before the conclusion of the sentencing hearing. The court informed defendant (1) he had the right to appeal, (2) that prior to an appeal he must file within 30 days a motion to withdraw his guilty plea, (3) he must specify his reasons for withdrawal and any reason not stated will be waived, (4) if he is allowed to withdraw his plea, the judgment will be vacated and a trial date set, and (5) if he cannot afford an attorney, one would be appointed and transcripts provided. Therefore, the court fully complied with the requirements of Rule 605(c), and we agree with appellate counsel any argument to the contrary would be without merit.

¶ 45                                         C. Rule 604(d) Requirements

¶ 46 Rule 604(d) requires counsel representing a defendant on a motion to withdraw his guilty plea to certify the following:

> "[T]he attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings."

"[S]trict compliance with Rule 604(d) is required." *People v. Prather*, 379 Ill. App. 3d 763, 768 (2008). In general, we consider the certificate itself to evaluate compliance with Rule 604(d); however, "we may consider the record where it undermines the certificate filed." *People v. Neal*, 403 Ill. App. 3d 757, 760 (2010). As we have demonstrated in prior appeals of this case, the proper remedy for counsel's failure to comply strictly with Rule 604(d) is to remand the cause to the trial court for the opportunity to file a new motion to withdraw the guilty plea and a new hearing on the motion. See *People v. Bridges*, 2017 IL App (2d) 150718, ¶¶ 6, 12; see also *Scott*, 2020 IL App (4th) 190259-U; *Scott*, 2019 IL App (4th) 180244-U; *Scott*, 2017 IL App (4th) 150761. Whether defense counsel complied with Rule 604(d) is reviewed *de novo*. *People v. Grice*, 371 Ill. App. 3d 813, 815 (2007).

¶ 47      Here, counsel filed a facially compliant certificate pursuant to Rule 604(d). Nothing in the record undermines counsel's Rule 604(d) certificate. Therefore, we agree with appellate counsel any argument postplea counsel failed to comply with Rule 604(d) is without arguable merit.

¶ 48                      D. Motion to Withdraw Guilty Plea

¶ 49      "A defendant has no absolute right to withdraw his guilty plea." *People v. Hughes*, 2012 IL 112817, ¶ 32. Rather, the defendant must establish "a manifest injustice under the facts involved." *Id.* The decision to grant or deny a motion to withdraw a guilty plea and vacate the judgment is generally reviewed for an abuse of discretion. *People v. Baez*, 241 Ill. 2d 44, 109-10 (2011). "An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the *** court." *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009).

¶ 50 In this case, defendant offered three bases on which to withdraw his guilty plea: (1) defendant did not understand the nature of the charges against him, (2) defendant did not actually fire the gun and his codefendant, Gonzalez, offered to provide an affidavit stating Gonzalez was the one that fired the gun, and (3) defendant wished to proceed to trial.

¶ 51                             1. *Nature of the Charges Against Defendant*

¶ 52 Defendant first alleged that, due to the head injury he suffered as a child, he has difficulty understanding complex situations and, therefore, did not understand the nature of the charges against him when he pleaded guilty.

¶ 53 Following defendant's testimony, the trial court determined, although it believed defendant suffered a head injury as a child, there was no basis to conclude the injury affected defendant's ability to understand the proceedings at the hearing on the guilty plea. "[W]e must give great deference to the court's factual findings because the trial court stands in the best position to weigh the credibility of the witnesses." (Internal quotation marks omitted.) *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 31. During the plea hearing, the court thoroughly explained the charge against defendant and the consequences of pleading guilty, and defendant confirmed he understood. The court found defendant's testimony that, despite his confirmation, he did not actually understand the nature of the charges was not credible. The court's determination was not arbitrary, fanciful, or unreasonable, and therefore we agree with appellate counsel any argument the court's decision was an abuse of discretion would be without merit.

¶ 54                             2. *Identity of the Shooter and Gonzalez's Alleged Affidavit*

¶ 55 Defendant next alleged he did not personally shoot Mundo, and his codefendant, Gonzalez, agreed to provide him with an affidavit stating as such.

¶ 56          Similar to defendant's testimony he did not understand the nature of the charges against him, the trial court did not find defendant's testimony that he was not the shooter to be credible. The evidence presented in the State's factual basis for defendant's plea was consistent with defendant being the shooter. Defendant admitted to police he fired the gun, killing Mundo, and pawned the gun after the shooting. Defense counsel acknowledged the State had witnesses who would testify consistently with the State's factual basis, and defendant agreed to plead guilty after he was identified as the shooter multiple times during his plea hearing.

¶ 57          Further, the trial court did not find defendant's testimony credible as to defendant's conversation with Gonzalez. First, such a conversation would be a "complex situation" of the exact type defendant was claiming he had difficulty understanding, undermining his own testimony. Defendant did not present an affidavit from Gonzalez supporting the conversation because his counsel could not speak with Gonzalez, and defendant's own account of the conversation was not credible. Deferring to the court's findings of fact, as we must, the court's denial of this claim was not arbitrary, fanciful, or unreasonable. We agree with appellate counsel that any argument on appeal to the contrary would be meritless.

¶ 58                    3. *Desire to Proceed to Trial*

¶ 59          Defendant's final allegation is that he wished to proceed to trial.

¶ 60          As discussed, "[a] defendant has no absolute right to withdraw his guilty plea." *Hughes*, 2012 IL 112817, ¶ 32. A desire to proceed to trial despite already pleading guilty is not "a manifest injustice." *Id.* Therefore, defendant's desire to proceed to trial, no matter how sincere, was not a basis to withdraw his guilty plea. Therefore, it was not an abuse of discretion to deny defendant's motion on this ground. We agree with appellate counsel no meritorious argument can be made otherwise.

¶ 61                          E. Excessive Sentence

¶ 62        In *People v. Johnson*, 2019 IL 122956, ¶¶ 49-51, 57, our supreme court held that

a defendant who enters a negotiated guilty plea—including one that sets a sentencing cap—must

file a motion to withdraw his guilty plea before challenging a sentence that is statutorily

authorized, constitutional, and within the terms of the plea agreement.

¶ 63        Defendant entered into a negotiated guilty plea with the State in which, in

exchange for his plea to first degree murder, the State agreed to limit its sentencing

recommendation to 60 years' imprisonment. The sentence for first degree murder is "not less

than 20 years and not more than 60 years." 730 ILCS 5/5-4.5-20(a) (West 2014). Additionally,

because defendant "personally discharged a firearm that proximately caused *** death to another

person, 25 years or up to a term of natural life" was to be added to his sentence. *Id.*

§ 5-8-1(a)(1)(d)(iii). Therefore, defendant was subject to a term of imprisonment of 45 years to

natural life. The plea agreement limited that term to 45 years to 60 years. Defendant received a

sentence of 55 years' imprisonment. Defendant's sentence was statutorily authorized,

constitutional, and within the terms of the plea agreement. Thus, defendant was required to

withdraw his guilty plea in order to challenge his sentence. See *Johnson*, 2019 IL 122956, ¶ 57.

¶ 64        Because defendant could not challenge his sentence without withdrawing his

guilty plea, we agree with appellate counsel no meritorious argument can be made on appeal that

defendant's sentence was excessive.

¶ 65              F. Ineffective Assistance of Postplea Counsel

¶ 66        Finally, appellate counsel asserts there is no merit to a claim postplea counsel was

ineffective for failing to develop a claim that plea counsel did not properly explain the charges to

defendant before he pleaded guilty.

¶ 67        For a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Hodges*, 234 Ill. 2d 1, 17 (2009). The defendant must first establish that, despite the strong presumption that trial counsel acted competently and that the challenged action was the product of sound trial strategy, counsel's representation fell below an objective standard of reasonableness under prevailing professional norms such that he or she was not functioning as the counsel guaranteed by the sixth amendment. *People v. Manning*, 227 Ill. 2d 403, 416 (2008). Second, the defendant must establish prejudice. *People v. Valdez*, 2016 IL 119860, ¶ 14. In most situations, this is done by showing a reasonable probability that the proceeding would have resulted differently absent counsel's errors. *Id.* However, to establish prejudice in the context of a guilty plea, a defendant " 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *People v. Brown*, 2017 IL 121681, ¶ 26 (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). When the ineffective assistance claim relates to a defendant's prospects at trial, the Illinois Supreme Court has required "a claim of innocence or a plausible defense to establish prejudice." *Id.* ¶ 45 (citing *People v. Hall*, 217 Ill. 2d 324, 335-36 (2005)). When the claim relates to advice concerning the consequences of a plea, a petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." (Internal quotation marks omitted.) *Id.* ¶ 40. A failure to establish either prong of the *Strickland* test precludes a finding of ineffectiveness. *People v. Peterson*, 2017 IL 120331, ¶ 79.

¶ 68        Defendant was convicted of first degree murder alleging he personally discharged the firearm that caused Mundo's death, and therefore faced a sentence of 45 years to natural life. See 730 ILCS 5/5-4.5-20(a), 5-8-1(a)(1)(d)(iii) (West 2014). However, if defendant were not the

shooter, he would have faced a minimum sentence of 35 years under the accountability theory. See *id.* §§ 5-4.5-20(a), 5-8-1(a)(1)(d)(i). Therefore, as appellate counsel points out, postplea counsel could have argued defendant was not aware of this difference in the charges when he pleaded guilty, thus enhancing defendant's argument he did not understand the charges against him.

¶ 69        However, even if there was sufficient evidence in the record to argue whether plea counsel properly explained the charges to defendant, defendant could not have established he was prejudiced. Defendant could not have established (1) he had a plausible defense, (2) a claim of innocence, or (3) a decision to forgo his guilty plea would have been rational under the circumstances. Therefore, regardless of how postplea counsel would have framed such an argument, it would have been in vain. As the trial court stated when it denied defendant's motion to withdraw his guilty plea, "[a]ll of the evidence in this case is consistent with [defendant] being the one who pulled the trigger and killed Mr. Mundo." We agree with OSAD that no meritorious claim of ineffective assistance could be raised on appeal.

¶ 70                              III. CONCLUSION

¶ 71        After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel that this appeal presents no issue of arguable merit. Thus, we grant OSAD's motion to withdraw and we affirm the judgment of the trial court of Champaign County.

¶ 72        Affirmed.